**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Paul Olmos, | No. CV-11-00344-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Pending before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner Timothy Paul Olmos. (Doc. 1.) Magistrate Judge Bridget S. Bade has issued a Report and Recommendation ("R & R") in which she recommended that the Court deny the petition with prejudice; Solis has objected to the R & R. (Docs. 67, 75.) Because objections have been filed, the Court will review the petition de novo. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). For the following reasons, the Court accepts the R&R in large part, with slight modifications, denies the petition in part, and refers this case back to Magistrate Judge Bade. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate"); Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## BACKGROUND

Olmos was indicted on one count of child molestation, one count of sexual conduct with a minor, and one count of sexual abuse in Maricopa County Superior Court

on August 20, 2004. (Doc. 40-1, Ex. A.) With each count, the State alleged that Olmos had committed a dangerous crime against children. (*Id.*) After all the evidence was presented, the jury came back on February 25, 2005, with a verdict of guilty on the charges of child molestation and sexual abuse, but were unable to arrive at a verdict on the charge of sexual conduct with a minor.[1] (*Id.*, Ex. C.) The trial court imposed a mitigated 15-year prison sentence, placed Olmos on lifetime probation, and required him to register as a sex offender. (Doc. 40-4, Exs. E, F.)

Olmos appealed. With the aid of counsel, he raised the following issues before the Arizona Court of Appeals: (1) the trial court lacked jurisdiction to hear the case because it allowed testimony on evidence of other sexual contact between Olmos and the victim that was not presented to the grand jury; (2) the trial court should have granted a mistrial on the same basis; (3) the sexual abuse charge was duplicitous; (4) the trial court erred by not continuing sentencing to allow further investigation; (5) the sentence of 15-year imprisonment and lifetime probation constituted cruel and unusual punishment under the Eighth Amendment; (6) there were discrepancies between the trial transcript and the minute entry regarding the lifetime probation sentence. (Doc. 40-5, Ex. H.) In a memorandum decision filed on August 17, 2006, the Arizona Court of Appeals rejected all of Olmos's substantive claims, but corrected the minor discrepancy regarding the probationary sentence. (Doc. 40-4, Ex. G.) The Arizona and United States Supreme Courts denied review. (Doc. 40-5, Ex. I.)

On March 8, 2007, Olmos filed his first petition for post-conviction relief ("PCR 1") in Maricopa County Superior Court, raising a host of claims. (Doc. 40-6, Ex. J.) The court found that "defendant's claims for relief are either procedurally precluded or fail to raise any material issues of fact or law which would entitle the defendant to post-conviction relief . . . . For that reason and for the reasons set forth in the State's response," the petition was denied. (Doc. 41-2, Ex. L.) The Arizona Court of Appeals

---

[1] That count was dismissed on the State's motion. (Doc. 40-1, Ex. E.)

denied review on March 4, 2010. (*Id.*, Ex. M.)

While PCR 1 was still pending, Olmos filed a second petition for post-conviction relief ("PCR 2") in Superior Court on August 27, 2009, that raised five additional grounds for relief. (*Id.*, Ex. N.) The trial court found that "none [of the claims in PCR 2] fall within any of the exceptions for a successive Rule 32 petition" and denied the petition (*Id.*, Ex. O.) Once again, on May 4, 2010, the Arizona Court of Appeals denied review because Olmos had filed his petition for review late. (Doc. 41-2, Ex. P.)

Olmos filed a petition for post-conviction relief for the third time ("PCR 3") on October 5, 2010. (*Id.*, Ex. Q.) He asserted a single treaty-related issue. (*Id.*) The state court dismissed the petition on November 10, 2010, as both untimely and without merit. (*Id.*, Ex. R.) The Arizona Court of Appeals denied review. (*Id.*, Ex. S.)

Finally, Olmos filed a fourth petition ("PCR 4") on January 21, 2011, that raised two federal constitutional issues. (*Id.*, Ex. T.) On February 18, 2011, the state court dismissed the petition because the petition was untimely and raised issues that Olmos could have raised on direct appeal. (*Id.*, Ex. U.) The Arizona Court of Appeals declined to review that determination. (*Id.*, Ex. V.)

Olmos next filed the instant petition for writ of habeas corpus in federal court on February 22, 2011. (Doc. 1.) The petition asserts 14 grounds for relief that are discussed in detail below. (*Id.*) After the briefing completed, Magistrate Judge Bade issued an R&R in which she recommended denial of the petition and certificate of appealability. Olmos timely filed objections and this Court will now review the petition de novo.

## DISCUSSION

### I.   LEGAL STANDARDS

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2006). Review of Petitions for Habeas Corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* U.S.C. § 2244 et seq.

Under AEDPA, the Court may not grant habeas relief unless it concludes that the

state's adjudication of the claim (1) resulted in a decision that  was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2). Nor may the Court grant habeas relief under AEDPA unless the petitioner has first exhausted his claim in state court. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).

### A.     Federal Habeas Corpus Review

A court reviewing a petition alleging that a state court violated a constitutional rule[2] can grant relief only if the state court decision was "contrary to, or involved an unreasonable application of" clearly established law. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Clearly established Federal law" in § 2254(d)(1) refers to the Supreme Court's precedents in effect at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Greene v. Fisher*, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). In applying these standards, the federal habeas court reviews the last reasoned decision by the state court. *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

A state court's decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S.

---

[2] None of the rules upon which Olmos relies qualify as "new" under *Teague v. Lane*, 489 U.S. 288 (1989).

at 75. The "unreasonable application" clause requires the state court's application of federal law to be more than incorrect or erroneous in the eyes of the reviewing court; it must be objectively unreasonable. *Id.* Habeas is not granted merely when a federal court disagrees with a state court's constitutional interpretation: "the most important point is that an unreasonable application of federal law is different than an incorrect application of federal law." *Williams*, 529 U.S. at 410.

### B.     Exhaustion and Procedural Default

A petitioner is required to exhaust his claims in state court before bringing them in a federal habeas action. 28 U.S.C. § 2254(b)(1)(A). In this context, exhaustion requires a petitioner to "give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842. In Arizona, a petitioner is required to "fairly present" all claims he seeks to assert in his habeas proceeding first to the Arizona Court of Appeals either through direct appeal or the state's post-conviction relief proceedings. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

For a petitioner to have fairly presented his claims to the appropriate state courts, he must have described the operative facts and the federal legal theory that support his claim. *See Baldwin v. Reese*, 541 U.S. 27, 29, 31 (2004); *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (per curiam), *cert. denied sub nom Ryan v. Scott*, 558 U.S. 1091. The petitioner must alert the state court to the federal nature of the right he claims, and broad appeals to "due process" and similar concepts are insufficient. *See Johnson v. Zenon*, 88 F.3d 828, 830–31 (9th Cir. 1996) ("While he did assert that the admission of the prior act evidence 'infringed on his right to present a defense and receive a fair trial,' the assertion was made in the course of arguing that the evidentiary error was not harmless under state law. Because Johnson never apprised the state court of the federal nature of his claim, he has not satisfied the fair presentation prong of the exhaustion requirement."); *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,

are insufficient to establish exhaustion.").

If a petitioner has failed to "fairly present" his federal claims to the state courts—and has therefore failed to fulfill AEDPA's exhaustion requirement—the habeas court must determine whether state remedies are still available for the petitioner; if not, those claims are procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Another way a petitioner can suffer a procedural default is if the state court rejected the claim not on the merits, but because the petitioner failed to comply with a procedural rule. "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, ___ U.S. ___, ___ 132 S. Ct. 1309, 1316 (2012); *see also Coleman*, 501 U.S. at 729–30 ("The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds."). Arizona has several rules that petitioners must follow when they seek to present claims in post-conviction relief proceedings; failure to comply with those rules results in a procedural default. *See, e.g.*, Ariz. R. Crim. P. 32.2(a). For example, if a petitioner seeks to bring a claim for the first time in a post-conviction relief proceeding that was available on appeal, the court can find the claim barred because a petitioner cannot bring claims in collateral proceedings that were available on appeal. *See id.* 32.2(a)(1). When the state court invokes that procedural rule, its judgment rests on a provision of state law that is both adequate and independent of the merits. And so the court in a federal habeas proceeding will accept the state court's procedural ruling and find the petitioner's claim defaulted. The Supreme Court has upheld reliance on Arizona's Rule 32 as an adequate and independent state ground. *See Stewart v. Smith*, 536 U.S. 856 (2002). Finally, the fact that the state court may have denied the petition on the merits in the alternative does not

vitiate the adequacy and independence of the state ground. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

Still, a petitioner can overcome a procedural default. A habeas court will consider claims the petitioner has procedurally defaulted only if he can demonstrate (1) cause for his failure to comply with state rules and actual prejudice or, in the very rare instance, (2) that a miscarriage of justice would occur. *See Dretke v. Haley*, 541 U.S. 386, 388–89 (2004). "Cause" means "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). It can include a claim that petitioner's counsel provided ineffective assistance that caused the default. *Id.* at 488–89. But that ineffective assistance of counsel claim itself must have been properly presented to the state courts for it to serve as cause to excuse a procedural default. *Id.* Even if a petitioner demonstrates cause for a procedural default, he must nevertheless show "prejudice" or that the supposed constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Finally, a miscarriage of justice is shorthand for a situation "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke*, 541 U.S. at 393 (quoting *Murray*, 477 U.S. at 496).

## II.    ANALYSIS

### A.    Ground One: Indictment Flaws

Olmos's first claim for relief is that his "indictment was fatally flawed violating his rights guaranteed by the 5th, 6th, and 14th Amendments of the U.S. Constitution." (Doc. 1 at 6.) The grand jury indicted Olmos on August 20, 2004, on three counts. Count One alleged that Olmos molested the victim "on or between the 1st day of February, 2004 and the 29th day of February, 2004." (Doc. 40-1, Ex. A.) Count Two alleged that Olmos

1   engaged in sexual intercourse or oral sexual contact with the victim, and Count Three

2   alleged that Olmos "engaged in any direct or indirect touching, fondling, or manipulating

3   of any part of the female breast" of the victim, all within the same timeframe. (*Id.*) Olmos

4   argues that the grand jury issued the indictment after hearing testimony about only one

5   incident of sexual contact. (Doc. 1 at 8.)

6       Olmos finds fault with what happened at trial. Olmos claims that, one day before

7   trial was to begin, the county attorney "informed the trial court of his intention to have

8   [the victim] testify to other acts of breast touching that are not encompassed by the

9   indictment." (Doc. 75 at 2.) The trial judge indicated that he would likely allow testimony

10  of other acts of alleged sexual abuse so long as they had been disclosed to Olmos. (Doc.

11  40-2, Ex. D (Tr. 2/22/05) at 22:10–23:1.) He deferred his ultimate ruling until after the

12  parties conferred. (*Id.*)[3] Ultimately, the trial judge permitted testimony from the victim

13  that Olmos touched her breasts on several other occasions. (Doc. 40-3, Ex. D (Tr.

14  2/23/05) at 90:22–92:16.)

15      According to Olmos, the trial judge's decision to permit testimony of other acts of

16  sexual misconduct effectively amended the indictment and denied him an opportunity to

17  defend himself. (Doc. 1 at 6-A.) In addition, he claims that the testimony of additional

18  sexual contact made the indictment duplicitous, thereby allowing the jurors to choose

19  from an unknown number of acts to arrive at a conviction. (*Id.* at 6-B.)

20      In order for Olmos to be able to raise this claim on a federal habeas petition, he

21  must have exhausted the claim in state court. 28 U.S.C. § 2254(b)–(c). That means he

22  must have fairly presented his indictment argument as a *federal* claim to the state court.

23  *See Scott*, 567 F.3d at 582. Scattershot citations to federal provisions or cases do not

24  magically make a claim federal; Olmos needed to articulate a federal theory for the

25  indictment argument. *See Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005).

26  Further, mere "general appeals to broad constitutional principles, such as due process,

27

28      [3] Contrary to Olmos's suggestion, the trial judge did not make any final ruling on admissibility.

equal protection, and the right to a fair trial," do not establish exhaustion. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citation omitted). Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim. *Castillo*, 399 F.3d at 999.

In his appellate brief to the Arizona Count of Appeals, Olmos cited the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution (and the Arizona Constitution) for the proposition that "[a]n indictment must inform the accused of the nature and charge against him." (Doc. 40-5, Ex. H at 16.) He then built his argument around state court cases, with one primary exception—he cited *United States v. Flynt*, 15 F.3d 1002, 1005 (11th Cir. 1994), to define when an indictment has been constructively amended. (Doc. 40-5, Ex. H at 16–17.) Olmos used *Flynt* for definitional purposes, to show that amendment actually occurred here. He also cited *Stirone v. United States*, 361 U.S. 212, 218–19 (1960), for the proposition that "[t]he grand jury has an independent responsibility to determine whether probable cause exists to believe a particular crime has been committed." (Doc. 40-5, Ex. H at 18.)

These isolated citations did not transform Olmos's claim on appeal into a federal claim. His primary argument was that the problems with the indictment necessitated a mistrial as a matter of state evidentiary law. (Doc. 40-5, Ex. H at 20–35.) The Arizona Court of Appeals construed his claim as one solely of state law. (Doc. 66, Ex. G.) Moreover, he cited no federal law or cases to support his argument that the indictment was duplicitous. The citations described above appeared in an earlier section where Olmos laid out the preliminary factual case that an amendment had occurred, not the section specific to the amended/duplicitous indictment claim. In sum, although Olmos cited federal cases to bolster his indictment-related claim on direct appeal, he did not fairly present an argument grounded in federal statutory or constitutional law. He therefore did not exhaust the federal claim he seeks to advance here on direct appeal.

Nevertheless, Olmos did present his federal indictment claim in PCR 1. (Doc. 40-6, Ex. J at 7-9.) The PCR court found, however, that "defendant's claims for relief are

either procedurally precluded or fail to raise any material issues of fact or law which would entitle the defendant to post-conviction relief" and denied the petition "[f]or that reason and for the reasons set forth in the State's response". (Doc. 41-2, Ex. L.)

Rule 32.2(a) of the Arizona Rules of Criminal Procedure sharply limits the availability of claims in a post-conviction relief proceeding. Specifically, "[a] defendant shall be precluded from relief under this rule based upon any ground: (1) Raisable on direct appeal under Rule 31 or on a post-trial motion under Rule 24; (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding; (3) That has been waived at trial, on appeal, or in any previous collateral proceeding." The PCR court expressly invoked procedural preclusion as a ground for denying Olmos's petition. While the trial court did not specify upon which form of procedural preclusion it relied (raisable on direct appeal, finally adjudicated on the merits, or waiver), the State had argued that "[t]hese claims were litigated at trial and on appeal. They are precluded by litigation." (Doc. 41-1, Ex. K, at 15.) Because the PCR court specifically referenced the State's response, the Court assumes that trial court relied on Rule 32.2(a)(2) as a procedural bar, namely that the Arizona Court of Appeals addressed Olmos's indictment-related claims on direct appeal. It may have also relied on 32.2(a)(1), because Olmos's federal claim was "[r]aisable on direct appeal."

Either way, the state court found the claim barred on state procedural grounds. That creates a procedural default so long as "the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *See Martinez*, 132 S. Ct. at 1316; *Coleman*, 501 U.S. at 729–30. Rule 32 is such a ground. *See Stewart*, 536 U.S. at 860–61. The fact that the PCR court also denied the petition on the merits does not destroy the adequacy and independence of the state ground. *See Harris*, 489 U.S. at 264 n.10 (1989). There has been a procedural default of Claim One.

Olmos can nevertheless avoid the procedural default if he can show cause. The R&R concluded that Olmos did not argue cause. Nevertheless, Olmos alleged that

ineffective assistance of his appellate counsel excused his procedural default. But in order for Olmos's ineffective assistance of counsel claim to serve as cause, he must have raised that ground to the state courts through his post-conviction relief. *See Murray*, 477 U.S. at 488–89. He did. In PCR 1, Olmos argued that his appellate counsel was ineffective because he did not pursue a number of claims on direct appeal, including the indictment claims contained in Claim One. (Doc. 40-6, Ex. J at 7–8, 24–25.) Olmos therefore preserved his ability to argue that ineffective assistance of appellate counsel can serve as cause to excuse his procedural default.

Olmos bears the burden of proving ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). To establish ineffective assistance of counsel, Olmos must show that his counsel's representation fell below an objective standard of reasonableness and that Olmos was thereby prejudiced. *Id.* Olmos can establish prejudice by showing that there is a "reasonable probability" that the proceedings would have been different but for counsel's deficient performance. *Id.* (holding that defendant was not denied effective assistance of counsel and stating: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

He has failed to carry his burden. Olmos does not allege any facts or weave any theory as to why his appellate counsel acted in an objectively unreasonable manner by failing to raise a federal constitutional claim on direct appeal. As Magistrate Judge Bade found, there was no federal error in the trial court's decision to allow the victim to testify as to other potential acts of molestation. (Doc. 67 at 10–12.) Nowhere has Olmos presented a cohesive argument as to why the trial court's decision violated his federal rights. The reasoning of the Arizona Court of Appeals likewise demonstrates why the trial court's decision was not erroneous. (Doc. 40-4, Ex. G.) Counsel was therefore not ineffective for failing to raise the federal challenge because a failure to raise a meritless claim does not constitute ineffective assistance of counsel. *See Juan H. v. Allen*, 408 F.3d

1262, 1273 (9th Cir. 2005).

**B.      Claim Two: Prosecutorial Misconduct**

Olmos next claims that the county attorney "committed multiple acts of prosecutorial misconduct, violating Petitioner's rights guaranteed by the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 7.) Olmos claims the county attorney misled the defense about the evidence he planned to introduce at trial (namely, he claimed that the state would only introduce evidence of one instance of sexual contact and then introduced the evidence about other sexual contact, as described in Claim One). Olmos also complains that the county attorney impermissibly vouched for the victim's credibility. Magistrate Judge Bade determined that Olmos procedurally defaulted this claim and failed to establish cause to excuse the default. Olmos objects and claims that he did not default and, even if he did, he has established sufficient cause to excuse the default and allow the Court to examine his claim on the merits.

The claims of prosecutorial misconduct were not raised at trial or on direct appellate review; instead, Olmos raised them for the first time in PCR 1. As the discussion in part II.A made clear, that was a procedural default. The PCR court determined that the claims raised in PCR 1 could have been raised on direct appeal and were therefore precluded under Ariz. R. Crim. P. 32.2(a)(1). (Doc. 41-2, Ex. L.) That is an adequate and independent state ground that operates as a procedural bar to reaching this claim on the merits. Olmos must therefore show cause to excuse the procedural default.

Once again, Olmos asserts that any failure to raise the prosecutorial misconduct claims on direct appeal lies with counsel, who acted unreasonably. In the R&R, Magistrate Judge Bade states that Olmos alleged ineffective assistance of counsel in the collateral state proceedings as the cause justifying the excuse. Were that the case, the R&R would be correct that ineffective assistance of counsel at the post-conviction stage does not serve as cause for failure to raise the prosecutorial misconduct claim on direct appeal. That is where the default occurred, not during the PCR proceedings. In his

Objections to the R&R, however, Olmos clarifies that he is not alleging ineffective assistance of post-conviction counsel, but that the assistance of his trial and appellate counsel fell below an objective standard of reasonableness. He claims that counsel did not raise the misconduct issues during trial and on appeal because of a conflict of interest. (Doc. 75 at 10.) In other words, Olmos is not alleging ineffective assistance of counsel at the PCR stage, but in direct proceedings. Olmos exhausted this cause argument in PCR 1. (Doc. 40-6, Ex. J at 23–24.) It is therefore a viable cause to excuse his procedural default.

But Olmos did not raise his conflict of interest argument in his filings with Magistrate Judge Bade. The Court has reviewed the "Traverse" and accompanying "Statement of Points and Authorities" that Olmos filed with Magistrate Judge Bade, and he does not raise this conflict of interest claim anywhere in his discussion of Ground Two. (Doc. 51 at 5–6.) He refers to a "Part III-B of the Memorandum" in this section, though. (*Id.*) It appears Olmos filed an additional "Memorandum in Support of Petition for Writ of Habeas Corpus" in addition to his "Statement of Points and Authorities." (Doc. 53.) Magistrate Judge Bade, however, struck that document from the record for failure to comply with the rules. (Doc. 56.) Olmos promptly filed a Motion for District Court Judge to Alter or Amend Judgment of Magistrate. (Doc. 58.) This Court denied that Motion. (Doc. 59.) Olmos has not objected to that ruling or Magistrate Judge Bade's ruling here. Magistrate Judge Bade's ruling therefore stands and Olmos's "Memorandum" will not be considered.[4]

Because Olmos did not properly raise the grounds for cause excusing his procedural default of Ground Two—an unelaborated conflict of interest on the part of defense counsel—before the Magistrate Judge, he cannot raise it for the first time in his Objections. Generally, a district court need not consider new arguments raised for the first time in objections to an R&R. See *United States v. Howell*, 231 F.3d 615, 621–22

---

[4] Olmos also attached this document to his Objections as "Exhibit A." (Doc. 75.) But because it was already stricken from the record at a prior point, the Court has not considered it in ruling on the R&R.

(9th Cir. 2000); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). There are sound reasons of judicial efficiency that support this practice. Nevertheless, the Ninth Circuit has found an abuse of discretion where a district court failed to address a new argument advanced by a pro se litigant regarding a novel claim. *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) (finding that the district court abused its discretion by failing to address pro se petitioner's argument raised for the first time in objections to magistrate judge's report when petitioner was "functionally illiterate" and "was making a relatively novel claim under a relatively new statute"). None of those facts are present here. Therefore, the Court does not consider Olmos's argument that he is excused from his procedural default of Ground Two because his trial counsel had alleged conflicts of interest. Olmos has asserted no other cause to excuse the procedural default and the default stands.

### C.   Claim Three: Peremptory Strikes

Olmos's third ground for relief is that "[t]he State improperly used its peremptory strikes to exclude jurors based on their gender, violating Petitioner's right to a jury trial and equal protection of the laws pursuant to the 6th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 8.) Magistrate Judge Bade found this claim to be procedurally defaulted and cause for that procedural default to be absent.

Claim Three is indeed defaulted, for the same reasons as Claims One and Two: Olmos did not raise his peremptory strikes argument until a later collateral proceeding (here, PCR 4). (Doc. 41-2, Exs. T, U.) The PCR court dismissed the petition as untimely and procedurally precluded because, among other things, Olmos could have raised those claims on direct appeal. (*Id.*, Ex. U.) Olmos does not contest the existence of a procedural default in his Objections.

Nevertheless, he advances two rationales for why the Court should excuse that default. He cites a double-layer of ineffective assistance of counsel. He argues that counsel rendered ineffective service when he failed to raise this claim at trial and on appeal. (Doc. 51 at 8.) Again, ineffective assistance of counsel can serve as cause to

excuse a procedural default, but the ineffective-counsel-as-excuse claim must itself be exhausted by raising it in the first post-conviction relief proceeding. *See Murray*, 477 U.S. at 488–89. Olmos did not argue in PCR 1 that trial and appellate counsel were ineffective for failing to raise Claim Three, nor does it appear he has ever raised that argument.

The primary remedy when a petitioner has failed to present his claims to the appropriate state court is dismissal to allow the petitioner to meet the exhaustion requirements. *See Coleman*, 501 U.S. at 735 n.1. Here, however, the window of time for filing appropriate post-conviction relief has long since closed. The Court of Appeals affirmed Olmos's sentence on August 17, 2006. (Doc. 40-4, Ex. G.) Any subsequent petition filed by Solis to perfect his federal claim would be untimely and also barred under the rules described above for successive petitions. *See* Ariz. R. Crim. P. 32.4(a) ("In all other non-capital cases, the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."); *id.* 32.2(a). Olmos has therefore procedurally defaulted his argument that ineffective assistance of counsel at trial and appeal excused his procedural default of the peremptory strikes claim.

Perhaps recognizing this, Olmos asserts an additional layer of ineffective assistance of counsel. Olmos claims that he received ineffective assistance of counsel at the first post-conviction relief proceeding when counsel there[5] failed to argue that trial/appellate counsel was ineffective for failing to argue that the prosecution's peremptory strikes were unconstitutional. The ineffective assistance of PCR counsel then serves as cause to excuse the default of the claim that trial/appellate counsel was ineffective, which then serves as cause to excuse Olmos's default of the underlying claim.

---

[5] PCR counsel apparently filed a Notice of Completion with the PCR court in which he stated that Olmos had no viable claims. That Notice does not appear to be in the record.

Olmos attempts to derive support for the viability of this labyrinthine causal chain from *Martinez v. Ryan*, but that reliance is misplaced. The standard rule is that a petitioner has no constitutional right to counsel at collateral proceedings, and therefore cannot claim ineffective assistance at that stage. *See Coleman*, 501 U.S. at 753. The Supreme Court carved out a very narrow exception in *Martinez*: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at trial. 132 S. Ct. at 1321. But that is not Olmos's argument. Claim Three is not a claim of ineffective assistance of counsel. It is a substantive claim of constitutional violation that was defaulted when Olmos failed to raise it on direct review. He seeks to show as cause for that default the ineffective assistance of counsel at trial. But he defaulted the opportunity to argue ineffective assistance of trial counsel by failing to raise it in his first PCR petition. In PCR 1, he argued ineffective assistance of counsel, but not for failing to raise the claims in Ground Three. Olmos himself admits that he did not discover the basis for Claim Three until much later, before he filed his fourth PCR petition. (Doc. 51 at 8–9.) Olmos's claim is not ineffective assistance as cause to excuse default of a claim of ineffective assistance—it is that ineffective assistance serves as cause to excuse default of a claim of ineffective assistance as cause to excuse default of a constitutional claim. Olmos therefore seeks to extend *Martinez* to situations where the ineffective assistance claim is merely the excuse for a procedural default—not the base claim itself.

The concern in *Martinez* was that Arizona's system requires any claim of ineffective assistance of counsel to be raised first in a PCR petition; thus failure of counsel during the first proceeding where the ineffective assistance claim could be raised might be severely prejudicial. 132 S. Ct. at 1316–20 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). The

Court was not concerned with a situation where a petitioner has forfeited a substantive claim that could be raised on direct review and then relied on ineffective assistance of counsel as cause to excuse the default of the primary claim. Olmos has cited no case where the dizzying chain of excuses he proposes has found acceptance. The Court declines to do so here. Olmos cannot rely on ineffective assistance of counsel to excuse his procedural default of Claim Three.

Olmos also cites his limited access to legal materials as an inmate as cause. For the reasons ably discussed by Magistrate Judge Bade, limited access to legal materials and prisoner status does not serve as cause to excuse a procedural default. (Doc. 67 at 15.) Olmos has not shown any other cause, and Claim Three is therefore procedurally defaulted.

### D.    Claim Four

For his fourth claim, Olmos asserts that he "was denied the state-created right of being tried by a court with the proper jurisdiction pursuant to the rules of the court, violating his due process rights guaranteed by the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9.) In his view, the county attorney failed to comply with the state court rules that govern initiation of proceedings via direct complaint, and that failure stripped the trial court of jurisdiction. The R&R found that Olmos defaulted this claim and failed to show cause to excuse the default.

Default occurred. Olmos raised this claim—which he could have raised on direct appeal—for the first time in PCR 1. (Doc. 40-6, Ex. J.) As discussed above, the PCR court found the claim defaulted under Rule 32.2(a) because, among other things, it could have been raised on appeal. That failure to comply with the state rule means Olmos procedurally defaulted Claim Four.

Olmos argues that he received ineffective assistance of counsel at trial and on appeal because counsel failed to raise this argument on direct appeal. Olmos, however, did not exhaust his ineffective-assistance-as-excuse claim because he failed to raise it in PCR 1. For the reasons discussed above, it would be futile to require Olmos to refile in

state court to exhaust his claim—it would be dismissed as untimely and in violation of Arizona's rules that govern the filing of successive petitions. Olmos therefore lost his opportunity to argue ineffective assistance of counsel as cause to excuse his procedural default of Claim Four. He has not asserted cause to justify the default of his ineffective-assistance-as-excuse claim. Claim Four is defaulted.

### E.     Claim Five

In Claim Five, Olmos contends that he was "convicted on the basis of a confession that was not voluntary, violating due process and his rights to not incriminate himself guaranteed by the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 13.) At trial, the prosecution introduced the recording of a "confrontation call," in which the mother of the victim, at the direction of law enforcement, spoke to Olmos on his cell phone while he was driving. (Doc. 1 at 15; Doc. 52-1 at 6.) During that conversation, Olmos admitted to having sexual contact with the victim. (*Id.*) Olmos now claims that this confession was involuntary.

He did not raise the claim on direct appeal and therefore defaulted it. To excuse that default, Olmos again claims that counsel was ineffective during direct proceedings. Contrary to the conclusion of the R&R, Olmos properly exhausted this excuse by arguing ineffective assistance of counsel on this basis in PCR 1. (Doc. 40-6, Ex. J, at 22–23.) Thus if Olmos can show that his counsel at trial and on appeal was ineffective for failing to preserve or raise the confession claim, he can excuse his procedural default.

*Strickland* provides the standard. Olmos must show both that his attorneys' conduct fell below an objective standard of reasonableness and that he suffered prejudice. 466 U.S. at 686–87. He cannot. Counsel's conduct was not objectively unreasonable because there is no merit to Olmos's claim. It is true that, independent of the dictates of *Miranda v. Arizona*, the Due Process Clause requires that any statement made by a suspect be voluntary. *See Oregon v. Elstad*, 470 U.S. 298, 304–05 (1985). "If a suspect's statements had been obtained by 'techniques and methods offensive to due process,' or under circumstances in which the suspect clearly had no opportunity to exercise 'a free

and unconstrained will,' the statements would not be admitted." *Id.* at 304 (quoting *Haynes v. Washington*, 373 U.S. 503, 515, 514 (1963)). In other words, "[a] confession is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "In cases involving psychological coercion, 'the pivotal question . . . is whether[, in light of the totality of the circumstances,] the defendant's will was overborne when the defendant confessed.'" *Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Cir. 2011) (quoting *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993)), *cert. denied*, 132 S. Ct. 1811 (2012).

There is no evidence that Olmos's "will was overborne." The circumstances surrounding the call lacked any coercive indicators. The conversation did not occur in a police-dominated atmosphere by any stretch—Olmos was driving his own car, speaking on his own cell phone. He spoke with the victim's mother, not police officers, although Olmos contends that the police set up and directed the conversation. (Doc. 51 at 13.) Even if the police were trying to trick Olmos, police officers often use deception during interrogation, and the Supreme Court has held that such tactics are well within the range of permissible conduct. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (holding that a police officer's lie to defendant about his cousin confessing to the commission of a murder was "insufficient in [the Supreme Court's] view to make [an] otherwise voluntary confession inadmissible"). Nor is appealing to a suspect's emotions, morals, or religion inherently coercive. *See Ortiz*, 671 F.3d at 869–70, 871–72; *Miller*, 984 F.2d at 1031–32. Consequently, counsel was not ineffective for failing to raise Claim Five. It was therefore defaulted, and, in any event, the claim lacks merit.

## F.    Claim Six: Cruel and Unusual Punishment

Olmos's eighth claim is that his "sentence was disproportionate to the offenses, violating his right to be free from cruel and unusual punishment pursuant to the 8th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-2.) Olmos was sentenced to 15 years in prison and lifetime probation and was required to register as a sex offender. As Magistrate Judge Bade determined, this claim was properly exhausted and not

procedurally defaulted—it was raised on direct appeal and addressed squarely by the Arizona Court of Appeals. (Doc. 61-1, Ex. G at 15–18.)

Olmos claims that the Arizona Court of Appeals made two crucial errors when it found no Eighth Amendment violation and rejected Olmos's claims that (1) his relationship with the victim was consensual and (2) the Arizona Supreme Court's decision in *State v. Davis*, 206 Ariz. 377, 79 P.3d 64 (2003), required a less severe sentence. AEDPA sharply circumscribes the Court's review of the Arizona Court of Appeals decision. A court reviewing a petition alleging that a state court violated a constitutional rule that is not new can grant relief only if the state court decision was "contrary to, or involved an unreasonable application of" clearly established law. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). Clearly established federal law consists of "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). Habeas is not granted merely when a federal court disagrees with a state court's constitutional interpretation: "the most important point is that an *unreasonable* application of federal law is different than an *incorrect* application of federal law." *Williams*, 529 U.S. at 410.

Olmos has not shown anywhere that the decision of the Arizona Court of Appeals misapplies the law handed down by the United States Supreme Court. He argues that the Arizona Court of Appeals misapplied various Arizona Supreme Court precedents, but this Court does not make such determinations. AEDPA focuses the habeas court's inquiry to United States Supreme Court precedent. Olmos's argument that the Arizona Supreme Court decision in *State v. Davis* was somehow a manifestation of United States Supreme Court precedent is unconvincing. The scope of review in a federal habeas proceeding is very narrow and does not encompass such review. To the extent it does, Magistrate Judge Bade examined that argument in greater detail and her explanation is adopted and incorporated by reference here. Olmos claims that the R&R erred by not expressly addressing the imposition of lifetime parole. While he is correct that the R&R did not

expressly analyze the imposition of lifetime parole as a separate part of his sentence, that omission makes no substantive difference. Magistrate Judge Bade's analysis of the decision of the Arizona Court of Appeals is correct. Olmos has failed to show that the state court decision was "contrary to, or involved an unreasonable application of" clearly established law.

### G.     Ground Seven: Jury Right—Sentence Range

Seventh, Olmos claims that he "was denied the right to have a jury establish the sentencing range under which he was to be punished, violating his right to a jury trial guaranteed by the 6th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-3.) This claim was defaulted. It appeared for the first time in PCR 3. (Doc. 41-1, Ex. N.) The PCR court held that Olmos failed to comply with Rule 32.1(a) regarding claims that can be raised in a successive post-conviction relief petition. (*Id.*, Ex. O.) That failure to comply with a state procedural rule bars consideration of Olmos's claim unless he can show cause and prejudice.

He does not. Olmos argued that his procedural default of Claim Seven is excused because he received ineffective assistance of counsel at his first post-conviction relief proceeding. Even if he did, Olmos's default did not occur there—it occurred when he failed to raise this issue on direct appeal. His claim was defaulted before he even filed PCR 1. Olmos's reliance on *Martinez* is misplaced. There is no general right to effective counsel in collateral proceedings. *See Coleman*, 501 U.S. at 753–56. *Martinez* carved out a very limited exception for one claim (a direct claim of ineffective assistance of counsel) for those states (like Arizona) where that claim can be raised for the first time only in a post-conviction relief proceeding. 132 S. Ct. at 1320. Olmos therefore failed to show cause to excuse his procedural default of Claim Seven.

### H.     Claim Eight: Jury Right—*Blakely* Claim

In Claim Eight, Olmos argues that his "sentence was increased on the basis of facts found by a judge rather than by the jury violating substantive due process and the right to a jury trial guaranteed by the 5th, 6th, and 14th Amendments of the U.S.

Constitution." (Doc. 1 at 9-4.) He specifically challenges the imposition of lifetime probation and the requirement pursuant to state and federal law that he register as a sex offender. Olmos failed to raise this claim on direct review and the PCR 1 court consequently found them precluded under Rule 32.1(a). (Doc. 41-1, Exs. K, L.) Because denial on the basis of Rule 32.1(a) is an adequate and independent state procedural bar, Olmos procedurally defaulted his claims for purposes of federal habeas review.

He attempts to obviate the procedural bar by claiming that his trial counsel was ineffective for failing to raise these claims in the direct proceedings. This ineffective assistance claim itself was properly exhausted in PCR 1. (Doc. 40-6, Ex. J at 24–25.)

As discussed above, counsel does not render ineffective assistance if he fails to raise a claim that lacks merit. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") And this claim lacks merit. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court held that "[w]hen a judge imposes an exceptional sentence, he must set forth findings of fact and conclusions of law supporting it." *Id.* at 299. In other words, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303.

Olmos was convicted of child molestation, a class 2 felony.[6] Ariz. Rev. Stat. § 13-1410(B); (Doc. 40-1, Ex. C.) Pursuant to Ariz. Rev. Stat. § 13-902(A)(1), the presumptive term of probation for a class 2 felony is seven years. Nevertheless, after conviction of an offense such as child molestation, "probation may continue for a term of not less than the term that is specified in subsection A of this section [seven years] up to and including life and that the court believes is appropriate for the ends of justice. *Id.* §

---

[6] Olmos erroneously claims that child molestation is a class 3 felony.

13-902(E). Olmos focuses on the requirement that the court believe the increase in probation from seven year to life be "appropriate for the ends of justice." In his view, that condition invites the judge to engage in sentence-enhancing factfinding in violation of *Blakely*.

Olmos misreads *Blakely*. There, the judge rejected the state's recommended sentence, made an express finding that the defendant acted with "deliberate cruelty", and then imposed a sentence that exceeded the maximum by more than a third. 542 U.S. at 300. The jury had not made a finding of deliberate cruelty, and that finding was essential to the imposition of the exceptional sentence. *Id.* In contrast, § 13-902(E) does not invite the judge to find additional facts relating to Olmos's crime. The predicate fact is the conviction itself, and only the jury made that determination. Olmos is correct that the judge must make an "ends of justice" finding, but that conclusion is not the factfinding endeavor the Supreme Court condemned in *Blakely*. Impermissible factfinding involves specific judicial determinations of facts like motive or the presence of certain aggravating factors. The trial judge did not violate *Blakely* by imposing lifetime probation.

Nor did he violate *Blakely* by requiring Olmos to register as a sex offender. The Arizona registration statute authorizes the judge to require registration upon the jury's conviction of a crime like child molestation. *See* Ariz. Rev. Stat. § 13-3821. While the judge appears to retain some discretion in determining whether to require registration, see *id.* § 13-3821(C), he does not need to find additional facts to do so. The exercise of discretion is different from judicial factfinding. The former involves weighing facts already found by the jury, while the latter involves the judge going beyond the facts found in the verdict. Therefore, there was no *Blakely* violation. The trial judge's exercise of discretion at sentencing did not violation the Constitution. Any failure to raise that claim by counsel therefore did not fall below an objective standard of reasonableness.

## I. Claim Nine: Presentence Report

Claim Nine is an argument that Olmos "was sentenced on the basis of a grossly inaccurate presentence report (PSR) that he had no opportunity to review and dispute,

violating his right to due process guaranteed by the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-5.) The claim was defaulted for the same reason as Claim Eight.

Olmos asserts ineffective assistance of counsel to excuse his procedural default of Claim Eight. Magistrate Judge Bade determined that, even if Olmos could show that counsel's failure to raise this claim fell below an objective standard of reasonableness, Olmos cannot show the other half of an ineffective assistance claim—prejudice, or a "reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Strickland*, 466 U.S. at 686–87. Olmos's Claim Nine is itself essentially a claim of ineffective assistance of counsel—he asserts that his counsel failed to review the PSR with him and failed to object to misleading statements contained therein. Olmos must therefore show that had his counsel raised this claim, the court would have accepted his argument that his trial counsel made a prejudicial error. Accordingly, Olmos must "show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter v. McCollum*, 558 U.S. 30, 41 (2009). The report as a whole must have been misleading and the court must have based its sentence on the improper information. *See United States v. Popoola*, 881 F.2d 811, 813 (9th Cir. 1989), *abrogated in nonrelevant part by Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992).

Olmos claims that the PSR was biased and contained numerous false statements, including (1) that Olmos commented on the case (he declined to do so on advice of counsel), (2) that he desired to be placed on sex offender probation, and (3) various inflammatory statements from the victim's mother. While the PSR is not part of the record and the Court is consequently unable to verify Olmos's claims, even if those claims were true, Olmos has not shown prejudice because he has not shown that the court based its sentence on improper information. Olmos was found guilty of molestation of a child and sentenced to 15 years, a *mitigated* sentence from the presumptive 17 years, the

sentence the PSR recommended. Ariz. Rev. Stat. § 13-604.01(D);[7] (Doc. 40-4, Ex. F.) For his conviction for sexual abuse, Olmos received lifetime probation. There is no evidence the trial judge relied on the allegedly misleading information in the PSR—a review of the sentencing transcript shows that he mitigated the government's recommended sentence.

Moreover, it appears that counsel effectively advocated for Olmos at sentencing. Counsel prepared a sexual offender risk assessment that was submitted at sentencing. (Doc. 40-4, Ex. F.) He submitted evidence that Olmos was not predatory and did not deserve a lengthy sentence as mandated by the statutes. Counsel filed with the sentencing court and presented evidence of Olmos's background that could have served as mitigating evidence. (Doc. 40-4, Ex. F, at 32:4-38:7.) Olmos has therefore failed to show how he was prejudiced by counsel's failure to raise this claim and indeed how he was prejudiced by the original failure of his trial attorney to properly handle the PSR.

**J.      Claim Ten: The Sentence and Substantive Due Process**

Olmos's tenth claim is that he "was sentenced to probation terms and conditions that violate substantive due process as guaranteed by the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-6.) This claim itself has three parts: (1) the conditions of probation are vague and overbroad; (2) the conditions of probation violate the free exercise clause; and (3) the requirement that he submit to a penile plethysmograph test is cruel and unusual punishment. (*Id.*) Like Claims Eight and Nine, Olmos raised these claims for the first time in PCR 1, and the PCR court held them to be barred by Rule 32.1, a procedural default in federal habeas terms. Olmos must show cause for why his default of each claim should be excused. He argues ineffective counsel as cause for his procedural default of each claim, and properly exhausted that excuse. (Doc. 40-6, Ex. J at 15–25.)

---

[7] Since Olmos's conviction, § 13-604.01(D) has been renumbered § 13-705.

### 1.     Vague and Overbroad

With regard to the first subpart of Claim Ten—that his probationary terms were vague and overbroad, Olmos advances no argument in his Objections as to why counsel was ineffective for failing to raise this claim in the direct proceedings. He makes a citation to the "Memorandum," but for the reasons discussed in part II.B, *supra*, the Court will not consider arguments advanced in that document. Olmos has therefore failed to show why the Court should excuse his default of the vagueness and overbreadth claim.

### 2.     Free Exercise

Olmos asserts that his counsel was ineffective for failing to raise the free exercise claim because the claim had "obvious" merit. Olmos is a Jehovah's Witness, and he cites several cases where the Supreme Court has upheld the religious freedoms of Jehovah's Witnesses, see, e.g., *Watchtower v. Village of Stratton*, 536 U.S. 150 (2002). He claims that the various conditions imposed on sex offenders prevent him from engaging in the close, frequent association with fellow believers that he believes is mandated by his religion. For example, he must get permission before going places frequented by children under 18 or initiate any contact with children under 18. (Doc. 40-6, Ex. J, "Ex. JJ".)

"[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The Supreme Court has held that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982) (Stevens, J., concurring in judgment)).

Olmos has not shown that the special sex offender conditions of probation are not neutral or of general applicability; in other words, he has not shown that the sex offender conditions of probation are targeted at religious observers, like the ordinance in *Church*

*of the Lukumi*. It may be true that compliance with those terms burdens Olmos's ability to practice his religion, but a burden that stems from an otherwise neutral law of general applicability does not violate the free exercise clause. Further, the conditions of probation do not erect an absolute bar against Olmos engaging in those activities; rather, Olmos must obtain permission from the probation department before doing so. In this context and on the facts that Olmos has alleged, it cannot be said that he had some viable free exercise claim. Counsel was therefore not ineffective for failing to raise it.

### 3.     Penile Plethysmograph Testing

Olmos contends that his counsel should have argued that the requirement that he submit to penile plethysmograph testing violated the Eighth Amendment's prohibition on cruel and unusual punishment. "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders*, 14 Temp. Pol. & Civ. Rts. L. Rev. 1, 2 (2004)). The Ninth Circuit has upheld the use of penile plethysmograph in certain instances as a condition of supervised release. *See id*. Numerous other courts have also so held. *See id.* at 566 (collecting cases).[8] Plethysmograph testing has been

---

[8] *See United States v. Kennedy*, 643 F.3d 1251, 1259 (9th Cir. 2011) (affirming imposition of PPG as specific condition of release); *United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011) (same); *United States v. Love*, 593 F.3d 1, 19–24 (D.C. Cir. 2010) (finding no plain error in imposition of PPG as specific condition of release); *United States v. Rhodes*, 552 F.3d 624, 626–29 (7th Cir. 2009) (same); *United States v. Brogdon*, 503 F.3d 555 (6th Cir. 2007) (affirming imposition of PPG as specific condition of release); *United States v. Dotson*, 324 F.3d 256 (4th Cir. 2003) (same); *see also Coleman v. Dretke*, 395 F.3d 216, 225–26 (5th Cir. 2004) (finding state imposition of PPG justified because it "serves the government interest in protecting members of the community from future sex offenses," despite being "invasive" and "intrusive"); *Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir. 1998) (rejecting a substantive due process challenge to PPG because "the plethysmograph is widely used in the scientific community for the treatment of pedophilia," even though "its use for screening is debatable and the scientific community is not of one mind," and "whether to administer the test [is] a question of professional judgment"); *c.f. Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1013–14 (8th Cir. 2006) (affirming summary judgment against plaintiff subject to state law imposed PPG).

recognized by some psychologists and researchers as a useful technique in the treatment of sexual offenders. *Id.* at 565. In light of the substantial weight of caselaw upholding the requirement of penile plethysmograph testing as a condition of supervised release, the Court cannot say counsel's refusal to raise an Eighth Amendment challenge to the practice fell below an objective standard of reasonableness. Olmos has failed to show cause to excuse his procedural default of Claim Ten.

### K. Claim Eleven: Congress's Power to Enact SORNA

For his eleventh claim, Olmos raises a challenge to the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, which "requires those convicted of certain sex crimes to provide state governments with (and update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *Reynolds v. United States*, ___ U.S. ___, ___, 132 S. Ct. 975, 978 (2012). Olmos asserts that "Congress exceeded its authority by applying federal sex offender registration requirements to persons convicted of sexual offenses in a state court, in violation of the Necessary and Proper Clause." (Doc. 1 at 9-8.)

Olmos raises this claim for the first time in this federal habeas petition. He raised a Commerce Clause argument in PCR 4, but did not raise the Necessary and Proper claim to the state court. (Doc. 41-1, Ex. N.) The R&R reasons that this failure means Olmos did not fairly present his claim to the state court, any return to state court to present this claim would be futile, and that Olmos has therefore procedurally defaulted his claim. The nature of Claim Eleven, however, is unusual. Olmos was convicted and sentenced in a state court for a violation of state law; nevertheless, the requirement that Olmos register results from both federal and state law. *See* 42 U.S.C. § 16901 *et seq*; Ariz. Rev. Stat. § 13-3821. It is the relatively unique federal-state dual-layer registration scheme that creates this odd scenario where a state prisoner convicted in state court under state law nevertheless raises a federal constitutional challenge to a federal law.

Within the federal system, state courts cannot nullify or declare unconstitutional provisions of federal law. *See* U.S. Const. art. IV, cl. 2; *Cooper v. Aaron*, 358 U.S. 1

(1958). To the extent Olmos contended that the federal regulations requiring sex offenders to register were unconstitutional, the state courts would have no power to resolve that claim. Arguably, then, Olmos's claim did not need to be exhausted because ADEPA's exhaustion requirement applies only "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The State seemed to recognize as much and cited this problem as the only basis for rejecting the federal claim in Olmos's PCR petition. (Doc. 41-1, Ex. K at 19 ("Olmos's Federal registration challenge is not before this Court because Olmos must bring this claim in the appropriate federal court.").) Accordingly, Olmos's Necessary and Proper Clause claim is properly before the Court.

While Olmos's claim is underdeveloped in the briefing and the State did not address the merits in its Response to the petition, it is clear that Olmos's claim lacks merit. Numerous courts have found that the Necessary and Proper Clause supports the constitutionality of SORNA's registration requirements. *See, e.g., United States v. Crum*, No. CR08-255RSL, 2008 WL 4542408 at *10 (W.D. Wash. Oct. 8, 2008); *United States v. Elmer*, No. 08-20033-01-KHV, 2008 WL 4369310 at *4 n.8 (D. Kan. Sept. 23, 2008); *United States v. Vardaro*, 575 F. Supp. 2d 1179, 1187–88 (D. Mont. 2008). The Necessary and Proper Clause empowers Congress to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. Const. art. I., § 8, cl. 18. "In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to 'regulate even those intrastate activities that do not themselves substantially affect interstate commerce,' so long as the Congressional enactment is 'necessary to make a regulation of interstate commerce effective.'" *United States v. Shenandoah*, 572 F. Supp. 2d 566, 577 n.7 (2008) (quoting *Gonzales v. Raich*, 545 U.S. 1, 35 (2005) (Scalia, J., concurring)). The means Congress chooses to effectuate a regulation of interstate commerce need not be narrowly tailored, but must be "reasonably adapted to the attainment of [that] end." *Gonzales*, 545 U.S. at 37 (quotation marks omitted).

SORNA's registration requirements are "reasonably adapted to meet the Congressional purpose of monitoring [or regulating] sex offenders who transgress state lines and is authorized by the Necessary and Proper Clause." *Vardaro*, 575 F. Supp. 2d at 1187–88. Without initial and continuing local registration, sex offenders could move undetected from state to state, which would frustrate Congress's power to punish those offenders and impede Congress's ability to ensure the channels of interstate commerce remain free from injurious uses. *See United States v. Keleher*, 1:07-CR-00332-OWW, 2008 WL 5054116 at *20 (E.D. Cal. Nov. 19, 2008). SORNA's registration requirements do not violate the Necessary and Proper Clause.

## L.    Claim Twelve: Equal Protection

Olmos's twelfth claim is that both "[s]tate and federal sex offender registration statutes create a limited sub-class of citizens in violation of substantive due process and the Equal Protection Clause pursuant to the 5th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-9.) Olmos raised this claim for the first time in PCR 1. (Doc. 40-6, Ex. J.) The PCR court rejected Olmos's equal protection argument because it could have been raised on direct appeal, creating a procedural default. But for the reasons describe in part II.K, *supra*, the PCR court could not have ruled that the federal registration scheme violated the federal Equal Protection Clause—Olmos did not need to exhaust that claim in state court before bringing it on federal habeas. The Court can consider that claim on the merits. Olmos, however, was under an obligation to exhaust his claim that the state registration scheme violated the Equal Protection Clause and he failed to properly do so. He must show cause for his default. Olmos once again cites ineffective assistance of counsel.

The federal and state registration schemes are similar in their essential requirements and functions. The equal protection analysis will be the same. The Ninth Circuit has addressed this question and definitively ruled that SORNA's registration requirements do not violate the Equal Protection Clause. *See United States v. Juvenile Male*, 670 F.3d 999 (9th Cir. 2012) *cert. denied*, ___ U.S. ___, 133 S. Ct. 234 (2012). Sex

offenders are not a protected class, which means that rational basis review applies. *Id.* at 1009. The Ninth Circuit laid out why Congress had a rational basis for imposing the registration requirements:

> SORNA's language and legislative history clearly indicate the legislative purpose for which it was enacted. *See* 42 U.S.C. § 16901 (in enacting SORNA, "Congress . . . establishes a comprehensive national system" that is designed to "protect the public from sex offenders and offenders against children"); Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007) (noting that SORNA was "designed . . . for the protection of the public"). We have held that protecting our communities is a legitimate legislative purpose. *See Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (holding, with regard to Alaska's sex offender registration laws, that "the statute's provisions serve a 'legitimate non-punitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community' ") (internal quotation marks omitted). The Supreme Court has also held that "there is no doubt that preventing danger to the community is a legitimate regulatory goal." *United States v. Salerno*, 481 U.S. 739, 747, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Thus, SORNA's requirements satisfy rational basis review and do not violate the Equal Protection Clause.

*Id.* at 1009–10. That same rationale applies to the Arizona registration scheme. Therefore, Olmos's federal claim is without merit and he has no valid excuse for his default of the state claim because counsel was under no obligation to raise a meritless claim.

**M.   Claim Thirteen: First Amendment**

Claim Thirteen is that "[s]tate and federal regulations requiring sex offenders to register all of their internet identifiers violates their right to anonymous free speech guaranteed by the 1st and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-10.) Olmos raised Claim Thirteen for the first time in PCR 2. (Doc. 41-1, Ex. N.) The PCR court found the claims were not cognizable on a successive petition under Rule 32.4(a). (Doc. 41-1, Ex. O.) Rule 32.4(a) allows a successive petition to assert only five types of claims: (1) the petitioner is being held in custody in excess of his sentence; (2) newly discovered material facts exist that would have changed the verdict or sentence; (3) the failure to timely file a PCR petition was not the petitioner's fault; (4) there has been a

significant change in the law that would probably overturn the defendant's conviction or sentence; and (5) no reasonable jury would have found the defendant guilty. Ariz. R. Crim. P. 32.1(d)–(e); *id.* 32.4(a) (referencing 32.1(d)–(e)). Failure to comply with this rule ostensibly creates a procedural default at the federal habeas stage, as Magistrate Judge Bade found. As an initial matter, Olmos's claim that SORNA (the federal statute) violates the First Amendment did not need to be exhausted, so the procedural default would apply only to the claim that the state law violated the First Amendment.

### 1.    State Registration Requirement and Procedural Default

For a state procedural rule to create a default at the federal habeas stage, the state law must be both independent and adequate. *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999). "To be deemed adequate, the state law ground for decision must be well-established and consistently applied." *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003). Rule 32.4(a) is well-established and consistently applied. Nevertheless, a state law ground can be inadequate if there is no support for the decision in the record. *See Ward v. Bd. of Comm'rs of Love Cnty.*, 253 U.S. 17, 22–23 (1920) (reversing state supreme court judgment that rested on state grounds that "were without any fair and substantial support"); *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir. 1990) (recognizing that there is no obligation to give deference to state court's interpretation of its own law when the interpretation is "untenable"); *Miller v. Rowland*, 999 F.2d 389, 392 n.3 (9th Cir. 1993) (same).

Olmos asserts that the PCR court's application of Rule 32.4(a) was untenable and therefore should not operate as a procedural bar. The requirement that a sex offender register all internet identifiers became a part of state law on April 16, 2007, and became effective (and retroactive) on January 1, 2008. *See* 2007 Ariz. Legis. Serv. Ch. 84 (H.B. 2734), codified at Ariz. Rev. Stat. §§ 13-3821(I)–(J). Olmos was sentenced on June 24, 2005, almost two years before the law was signed and two-and-a-half years before it came into effect. He could not have challenged the online identifiers requirement on direct appeal because it did not exist. After exhausting his direct appeals, Olmos filed

1    PCR 1 in March of 2007, which still predated passage and implementation of the online
2    registration bill. (Doc. 40-6, Ex. J.) The claim did not become available until January 1,
3    2008, and Olmos could therefore raise it for the first time only in a successive PCR
4    petition.

5        Still, Rule 32.4(a) allows successive petitions making a legal argument only if
6    "[t]here has been a significant change in the law that if determined to apply to
7    defendant's case would probably overturn the defendant's conviction or sentence". Ariz.
8    R. Crim. P. 32.1(g). Olmos's constitutional challenge to the online registration
9    requirement does not fit neatly into Rule 32.1(g), which seems geared toward substantive
10   legal changes that would raise doubts about the validity of the conviction or sentence.
11   The addition of online identifier registration does neither. It modifies the registration
12   requirement the trial court imposed as part of Olmos's sentence, but it does not call it into
13   question. Consequently, even if Olmos raised a successful First Amendment challenge to
14   the state registration requirements, that challenge would not "probably overturn the
15   defendant's conviction or sentence." *Id.* The PCR court's invocation of Rule 32.4(a)—
16   even though Olmos could not have challenged the online identifier registration in direct
17   proceedings or at PCR 1—is not completely untenable. Olmos has not shown that a
18   successful First Amendment challenge would overturn his conviction or the sentence
19   imposed by the trial court. None of the other grounds that would justify a successive
20   petition are available. There has been a procedural default.

21       Nevertheless, cause exists to excuse the default for the exact same reasons
22   discussed above. Olmos can show cause by establishing "that the factual or legal basis for
23   a claim was not reasonably available." *Date v. Schriro*, 619 F. Supp. 2d 736, 749 (D.
24   Ariz. 2008) (citing *Cook v. Schriro*, 516 F.3d 802, 827–29 (9th Cir. 2008)). He has done
25   so. The statute that Olmos seeks to challenge in Claim Thirteen was not on the books
26   when he was convicted, nor when he brought his initial PCR petition. Therefore, there is
27   cause to excuse the procedural default.

28       But to allow the Court to reach the merits, Olmos must also show prejudice, or

"actual harm resulting from a constitutional violation or error." *Id.* (citing *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984)). He has not done so. A petitioner suffers no actual prejudice when "[t]he other evidence of guilt presented at trial . . . was substantial to a degree that would negate" the alleged prejudice caused by the allegedly unconstitutional action. *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977). When the challenge is to the sentence, the petitioner must show that "his sentence would have been different absent the . . . error." *Correll v. Stewart*, 137 F.3d 1404, 1416 (9th Cir. 1998); *see Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (prejudice requires a showing that the error has a "substantial and injurious effect" on the sentence). Olmos has not shown that the alleged First Amendment violation caused by the state registration requirements was so toxic that it corrupted his entire sentence. The requirement of registering online names is but a small part of the overall registration scheme, which is but a small part of Olmos's sentence. The state registration requirement, when it comes into effect upon Olmos's release, see Ariz. Rev. Stat. § 13-3821(B), can be challenged through a civil action. In other words, Olmos will not suffer substantial prejudice if this Court does not reach his constitutional claim against the state registration requirement. Because Olmos has not shown prejudice, the procedural default stands.

## 2. SORNA Registration

As elaborated in prior sections, Olmos was not required to exhaust in state court his federal constitutional claim against SORNA's requirement for online registration. This Court can therefore consider the claim on the merits; however, neither Olmos nor the State has briefed the question on whether SORNA's requirement that sex offenders register all online identifiers applies to state convictions and violates the First Amendment. The R&R consequently did not address Claim Thirteen on the merits. To ensure deliberate consideration of the matter, the Court will refer this case back to Magistrate Judge Bade for consideration of this question and preparation of a second R&R.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### N.      Claim Fourteen: Ineffective Assistance of Counsel

Olmos's final claim is that he "received ineffective assistance of counsel during trial and appellate proceedings, violating his right to counsel guaranteed by the 6th and 14th Amendments of the U.S. Constitution." (Doc. 1 at 9-11.) He argues that counsel was ineffective for failing to raise all of the claims described above, except for Claim Six (that his sentence amounted to cruel and unusual punishment).

Olmos must have exhausted each ground for claiming ineffective assistance of counsel in PCR 1, his primary opportunity to assert this claim. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). A comparison of the twelve grounds on which Olmos asserts in this case that counsel was ineffective and those on which he asserted ineffective assistance of counsel in PCR 1 reveals only six grounds that were exhausted: Claim One (indictment), Claim Two (prosecutorial misconduct), Claim Eight (sentence enhanced based on judicial factfinding), Claim Nine (inaccurate PSR), and Claim Ten (conditions of probation and penile plethysmograph), Claim Twelve (registration violates equal protection). Olmos did not allege in PCR 1 that counsel was ineffective for failing to raise the other claims presented in his federal habeas petition. Because those claims had to be presented at PCR 1 and Olmos failed to do so, his claim of ineffective assistance on those grounds is in procedural default. Olmos does not argue cause and prejudice to excuse that default.

With regard to the grounds for ineffective assistance of counsel that Olmos has preserved, he has not articulated any cohesive theory for why counsel was ineffective. He instead makes a blanket assertion of ineffectiveness. It is not the Court's responsibility to fill in generic statements with factual detail and legal theory. Moreover the Court has already determined above that counsel was not ineffective by failing to raise Claims One, Eight, Nine, Ten, and Twelve, when the Court considered whether Olmos had shown cause to excuse the procedural default of the substantive claim itself. As for Olmos's claim that counsel was ineffective for failing to raise Claim Two, he has not presented any argument for why that was the case. He has consequently failed to show ineffective

assistance of counsel.

## CONCLUSION

Olmos has failed to show entitlement to relief on all of his claims, except his claim in Claim Thirteen that SORNA's requirement that sex offenders register their online identifiers violates the First Amendment. The Court therefore agrees and accepts Magistrate Judge Bade's R&R on those claims, with minor modifications. The First Amendment claim was not fully briefed by either party or addressed by Magistrate Judge Bade. The Court will consequently refer this case back to her for evaluation of Olmos's claim on the merits.

**IT IS THEREFORE ORDERED** that Olmos's Petition for Writ of Habeas Corpus (Doc. 1) is **denied and dismissed in part and deferred in part**.

**IT IS FURTHER ORDERED** that Magistrate Judge Bade's R&R (Doc. 67) is **accepted in part and modified in part** as described herein.

**IT IS FURTHER ORDERED** that this case is referred back to Magistrate Judge Bade for consideration of Claim Thirteen as described herein.

**IT IS FURTHER ORDERED** that this Order is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Whether a certificate of appealability should be issued will be addressed upon evaluation of Magistrate Judge Bade's second R&R that disposes of Olmos's remaining claim.

Dated this 24th day of June, 2013.

_H. Murray Snow_

/G. Murray Snow
United States District Judge